**This order is SIGNED.**

**Dated: February 14, 2018**





**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | **Bankruptcy No. 14-25882** |
| **Rory Dustin Pence,** | **Chapter 13** |
| Debtor. | **Judge William T. Thurman** |

### MEMORANDUM DECISION

The matter before the Court is the motion of Sheri Pence ("Ms. Pence" or "Movant") to Annul the Automatic Stay and In the Alternative, Motion for Relief From the Automatic Stay. The Debtor filed an Objection, and an Amended Objection. Both parties have filed supplemental memoranda in support of their positions. The Court conducted an evidentiary hearing on this matter on February 2, 2018. The Debtor was represented by Val Dalling, and Ms. Pence was represented by Douglas Barrett. The main issue here is whether a divorce decree issued by a state court in Utah while a chapter 13 bankruptcy case was pending is void for allegedly violating the automatic stay or whether the decree should stand.

The Court has considered the evidence properly before it, reviewed the arguments of counsel, and conducted an independent review of applicable law and issues this memorandum

decision, which will constitute the Court's findings of fact and conclusions of law under

Bankruptcy Rule 7052, made applicable to this contested matter by Bankruptcy Rule 9014.

## I. Jurisdiction, Venue and Notice

The jurisdiction of this Court is properly invoked under 28 U.S. C. § 1334. This is a core

proceeding within the meaning of  28 U.S.C. § 157(b)(2)(G) and this Court may enter a final

order. Venue is proper under the provisions of 28 U.S.C. §§ 1408. Notice of the hearings is found

to be adequate in all respects.

## II. Facts and Procedural History

The Debtor and Ms. Pence were previously married, and resided in a marital home

located at 290 S. 200 W. in Richfield, Utah (the "Residence"). This case concerns the parties'

divorce, and two bankruptcy cases filed by the Debtor. Ms. Pence filed for divorce in the Sixth

District Court of Sevier County, State of Utah, on March 15, 2013. While the divorce was

pending, the Debtor filed a chapter 13 bankruptcy petition on July 19, 2013 (the "First

Bankruptcy"). Ms. Pence did not bring a motion for relief from stay in the First Bankruptcy to

continue with the divorce case. The Debtor did not list his pending divorce on Part 4 of the

Statement of Financial Affairs, which requires a debtor to list all suits and administrative

proceedings, though he did a collection action. The First Bankruptcy was dismissed on December

23, 2013 and the case was closed on February 29, 2016.

The Debtor filed a second chapter 13 bankruptcy petition on June 4, 2014 (the "Second

Bankruptcy"), which is still ongoing. Because this was the second bankruptcy case filed within

one year, the stay in the Second Bankruptcy was governed by § 362(c)(3), which will be

discussed herafter. As in the First Bankruptcy, the Debtor did not list his pending divorce action

in his Statement of Financial Affairs. The Schedules show $9,958 in unsecured priority claims

consisting of domestic support obligations, and $7,592 of unsecured nonpriority claims. The

secured debt listed was the mortgage on the Residence, in the amount of approximately $80,000,

and a title loan of less than $1,000 on his vehicle. The value of the Residence listed on Schedule

A is $240,289. Ms. Pence was listed on Schedule E as a creditor holding an unsecured priority

claim for child support. She was not listed on Schedule D as a secured creditor, or on Schedule F

as an unsecured creditor.

The Debtor's chapter 13 plan was confirmed by the court on October 7, 2014. The plan

required payment of 100% of the allowed unsecured claims, with those payments being funded

by future monthly payments from the Debtor. The arrearage claim on the Residence, in the

approximate amount of $22,000 was listed in paragraph 6(d) in the plan, which provided that the

Debtor would cure the arrearage by making monthly payments to the Trustee, which would then

be remitted to the mortgage holder. The mortgage payments were not made and the mortgage

holder moved for relief from stay regarding the Residence within a few weeks of plan

confirmation. It appears, from the statements made in a response to the motion for relief from

stay, that the Debtor wished to work out a payment arrangement with the mortgage holder and

avoid an order lifting the stay, but there was a miscommunication, and the stay on the Residence

was lifted on February 5, 2016. The order signed by the Court stated that the automatic stay

imposed by § 362 was "hereby terminated" to allow the secured creditor to pursue its remedies

under state law. The Debtor moved to vacate the order lifting the stay in this Second Bankruptcy,

arguing that the miscommunication was grounds to have the order set aside. The Debtor entered

into a stipulation for payments with the mortgage holder, and the Court signed an order on April

3

29, 2016 that does not specifically say the automatic stay was reinstated, but the language

apparently assumes that the automatic stay as to the mortgage holder would remain in place

unless the Debtor defaulted on the required cure payments. On December 13, 2017, the mortgage

holder filed a declaration with this Court stating the Debtor had defaulted on the cure payments.

Based on that, the Court entered an order providing that the stay on the Residence was lifted

again on December 15, 2017. It appears that the Debtor was again able to cure the payments, and

the representations at the hearing in the present matter were that the Debtor is living in the

Residence and is current on his payments to the mortgage holder. However, no order has been

entered to reimpose the automatic stay.

Notice of the filing of the Second Bankruptcy is an issue in this matter. The Debtor and

Ms. Pence dispute whether or not Ms. Pence properly received notice of the Second Bankruptcy

which, according to the Debtor, gives rise to his claims that proceeding with the divorce case

violated the stay. Debtor's Exhibit C contains the certificates of service dated June 13, 2014,

showing that the chapter 13 plan and the notice of the meeting of creditors was mailed by the

Bankruptcy Noticing Center to Ms. Pence at 290 S. 200 W., Richfield, UT 84701, the Residence

where Ms. Pence was living at that time. Bankruptcy Rule 2002(g)(2) states that "notices shall be

mailed to the address shown on the list of creditors . . . ." The notices were properly addressed

under this section. "The rule is well settled that proof that a letter properly directed was placed in

a post office creates a presumption that it reached its destination in usual time and was actually

received by the person to whom it was addressed."[1] Ms. Pence testified that she did not receive

these notices, and raised the possibility that the Debtor may have tampered with the receipt of

---

[1]*Hagner v. United States*, 285 U.S. 427, 430 (1932).

mail. The Court does not find this testimony to be persuasive. Because these notices were

properly addressed and there is no evidence they were returned to the sender, the Court finds that

Ms. Pence received notice of the Debtor's Second Bankruptcy sometime in June 2014.

The Court's electronic filing system shows that on August 3, 2014, the Debtor changed

Ms. Pence's address to 347 N. 300 E., Richfield, UT 84701. The Debtor also provided that

incorrect address to the chapter 13 trustee, *see* Movant's Exhibits 3 and 5. The Debtor testified

that he believed this was the address of Ms. Pence's parents. That was incorrect. Mail sent to that

address was returned as undeliverable, *see* Movant's Exhibit 6, and the Court finds that Ms.

Pence did not receive the subsequent notices sent to this incorrect address. However, the lack of

receipt of ongoing notices does not negate the fact that Ms. Pence did receive the initial notices,

and so had adequate notice of the Debtor's Second Bankruptcy.

The Debtor's bankruptcy was discussed at the bench trial held in the divorce proceeding

on March 10, 2017. The trial transcript, Debtor's Exhibit I, contains a record of a discussion in

which the judge, the Debtor and Ms. Pence's attorney talk about the Debtor's pending

bankruptcy. The findings of fact and conclusions of law entered by the judge in the divorce

proceeding on June 15, 2017, Movant's Exhibit 13, refer to the Debtor's bankruptcy. Ms. Pence

argued that there was confusion as to whether the discussion related to the First Bankruptcy or

the Second Bankruptcy. This Court finds it related to the Second Bankruptcy.

The decree of divorce entered in the divorce proceeding on June 15, 2017 (Debtor's

Exhibit A) ("Divorce Decree") dealt with the matters related to the parties' divorce including a

division of property and will be discussed in more detail hereafter.

The Debtor had five attorneys during his divorce case. However, the Debtor was not

represented by an attorney at the trial on March 10, 2017, but hired one at some point thereafter.

It was this attorney who filed a notice of the automatic stay in the divorce proceeding on

September 20, 2017. Ms. Pence filed this motion to annul the stay or lift the stay on November 8,

2017.

## III. Law

### A. The Applicability of the Automatic Stay

The sole issue before the Court in this matter is whether the stay, if in effect as to the

divorce case, should now be lifted or annulled. The automatic stay is subject to limitations when

applied to a divorce case, and also when "a single or joint case of the debtor was pending within

the preceding 1-year period but was dismissed."[2] Those limitations are important in analyzing the

case presently before the Court.

### 1.      The Expiration of the Stay Under § 362(c)(3)(A) as to "Property of the Debtor"

The Second Bankruptcy case was the second case filed by the Debtor within a one-year

period. As such, the provisions of § 362(c)(3)(A) apply: "the stay under subsection (a) with

respect to any action taken with respect to a debt or property securing such debt or with respect to

any lease shall terminate with respect to the debtor on the 30th day after the filing of the later

case." The Debtor did not file a motion to continue the stay past this 30 day limit, as allowed by §

362(c)(3)(B), and so the stay as to property of the debtor expired on July 4, 2014.

The Debtor argued that the entry of the confirmation order reinstated the automatic stay

under § 362(a). The Court is not persuaded by this argument. There is a difference between the

---

[2]11 U.S.C. § 362(c)(3). Except as otherwise specified, all statutory citations are to Title
11 of the United States Code.

"stay" arising from a confirmed chapter 13 plan and the § 362(a) stay.[3] Section 1327(a) provides

that upon confirmation of a plan, the provisions of the plan bind the debtor and the creditor. "If a

chapter 13 plan provides for the curing of a prepetition default on a secured creditor's claim, the

secured creditor will be bound by the terms of the plan if it is confirmed."[4] This new arrangement

between a debtor and creditor may be termed a stay, in that the secured creditor may not pursue

remedies for default until the debtor fails to comply with the confirmed plan. However, the

confirmation order does not reinstate the full automatic stay of § 362.[5] Furthermore, there is no

specific reference to treatment of Ms. Pence and the divorce proceeding in the plan or order

confirming plan. Accordingly, the Court concludes that in this particular chapter 13 case, the stay

was not automatically reinstated by operation of law when the plan was confirmed.

There is case law in the tenth circuit that also affects the reach of the automatic stay in

this specific case. The Tenth Circuit Bankruptcy Appellate Panel has held that in a case to which

§ 362(c)(3)(A) applies (because the debtor has filed a second case within a one-year period), the

automatic stay terminates with respect to the debtor and the property of the debtor on the 30th

day after filing, but the stay does not terminate with respect to property of the estate.[6] In other

words, on the 30th day after the Debtor filed the petition in the Second Bankruptcy, the automatic

stay terminated as to the property of the Debtor, but remained in force as to property of the estate.

---

[3]*See In re Underhill*, 425 B.R. 614 (Bankr. D. Utah 2010).

[4]*Id*. at 618.

[5]*Id*. at 619 ("MidFirst's argument equates a 'stay' arising from a confirmed chapter 13 plan to the § 362(a) stay. The two are different.").

[6]*See In re Holcomb*, 380 B.R. 813, 816 (10th Cir. BAP 2008) ("[W]e conclude that the language of § 362(c)(3)(A) terminates the stay only as to the debtor and the debtor's property.").

At the commencement of any bankruptcy case, virtually all property owned by a debtor is automatically determined to be property of the estate.[7] The classification of property as property of the debtor would include exempt property.

### 2. Divorce and the Automatic Stay

In instances regarding divorce cases, the exceptions to the automatic stay are listed in § 362(b)(2). Filing a bankruptcy petition does not operate as a stay:

(A) of the commencement or continuation of a civil action or proceeding –
    (i) for the establishment of paternity
    (ii) for the establishment or modification of an order for domestic support obligations;
    (iii) concerning child custody or visitation;
    (iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or
    (v) regarding domestic violence[.]

The Divorce Decree entered in the divorce proceeding on June 15, 2017 (Debtor's Exhibit A) dealt with several topics, and the Court will summarize each paragraph individually, noting where a statutory exception to the stay applies.

Paragraph 1 of the Divorce Decree dissolved the marriage. Dissolution of a marriage is not subject to the automatic stay pursuant to § 362(b)(2)(A)(iv).

Paragraph 2 of the Divorce Decree dealt with custody of the minor children. Child custody determinations are not subject to the automatic stay pursuant to § 362(b)(2)(A)(iii).

Paragraph 3 of the Divorce Decree awarded child support. Child support determinations are a domestic support obligation and so are not subject to the automatic stay pursuant to § 362(b)(2)(A)(ii).

Paragraph 4 of the Divorce Decree awarded Ms. Pence one-half of the equity in the

--------

[7] *See* §541(a).

Residence, in the amount of $54,250. The state court determined that Ms. Pence had an equitable ownership in the Residence, and awarded her "an equitable lien and judgment against the real property and home in the sum of $54,250." The Debtor listed the Residence on Schedule A in his bankruptcy schedules. This paragraph of the Divorce Decree did purport to divide property of the estate, and the division of estate property is subject to the automatic stay, as specified in the language in § 362(b)(2)(A)(iv). The Debtor claimed an exemption of $30,000 in the Residence. Exempt property is property of the debtor, and not property of the estate, and so that portion of the equity in the Residence was not subject to the automatic stay and any division of property up to the amount of the homestead exemption by the state court would not be stayed.

Paragraph 5 of the Divorce Decree divided the personal property of the parties. The Debtor listed his personal property in his bankruptcy schedules, and then claimed an exemption on Schedule C in what appears to be substantially all of his personal property including all of his household goods, clothing, books, vehicles, machinery and tools. Because the personal property was exempted from the bankruptcy estate, it was therefore property of the Debtor, and the automatic stay had terminated with respect to this property.[8]

Paragraph 6 of the Divorce Decree awarded Ms. Pence one-half of the value of an asset called Six Pence. This asset requires some explanation. In the Debtor's Statement of Financial Affairs, the Debtor listed a business entity called Six Pence, Inc. which provided electrical contracting services. He testified that the business began in August 1998 and ended in November 2010. It was neither listed nor valued on his schedule of assets. It does not appear that any further investigation into the assets or business activities of Six Pence was undertaken. While the asset

---

[8] *See* § 362(c)(3)(A).

was not explored in the bankruptcy context, it was apparently the subject of discovery and discussion in the divorce proceeding, and the divorce court discussed it in the findings of fact and conclusions of law (Movant's Exhibit 13) that accompanied the Divorce Decree. The divorce court noted that the Debtor had not responded to discovery requests, and the testimony regarding Six Pence had been conflicting and unclear. The divorce court found that "the Petitioner [Ms. Pence] has been disadvantaged by the Respondent's [Debtor's] refusal to comply."[9] As a sanction for failure to respond, the divorce court found "that the value of the assets [of Six Pence] are $67,898.50 and that the Petitioner is entitled to a judgment against the Respondent for one-half (½) of the value in the sum of $33,949.25."[10]

While Six Pence was not disclosed as an ongoing business entity on the bankruptcy schedules, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[11] The Court concludes that Six Pence was property of the bankruptcy estate within the meaning of § 362(b)(2)(A)(iv), regardless of whether it was an ownership interest in a legal entity, or ownership of personal property such as tools and equipment.

Paragraph 7 of the Divorce Decree awarded alimony. Alimony is a domestic support obligation and so is not subject to the automatic stay pursuant to § 362(b)(2)(A)(ii).

Paragraph 8 of the Divorce Decree awarded each party one-half of the insurance proceeds from damage to the Residence. This Court has no evidence about whether or not the damage to

---

[9]Findings of Fact and Conclusions of Law entered by Judge Paul D. Lyman on June 15, 2017, Case 134600033, at paragraph 25, submitted as Movant's Exhibit 13.

[10]*Id*.

[11]§ 541(a)(1).

10

the Residence happened before or after the petition date. However, in a chapter 13 case, the

bankruptcy estate also includes property acquired after the petition date.[12] The Court concludes

the insurance proceeds are property of the estate.

Paragraph 9 of the Divorce Decree awards Ms. Pence her attorney fees incurred in the

divorce proceeding up to the date of the trial, which was held on March 10, 2017. It appears that

these attorney fees were incurred post-petition, and so are not a claim against or property of the

bankruptcy estate.

Paragraph 10 of the Divorce Decree awards costs to the prevailing party if either party

brings an action to enforce the Divorce Decree. As this clause applies only to future actions, it is

not part of the bankruptcy estate, and the automatic stay does not apply.

Accordingly, the only matters in the Divorce Decree that may be subject to the automatic

stay under § 362(b)(2)(A)(iv) are the decisions about the non-exempt equity in the Residence

(paragraph 4), the value of Six Pence (paragraph 6), and the award of insurance proceeds

(paragraph 8).

In a chapter 13 case, the value of property of the estate is accounted for in the proposed

distribution to creditors, generally referred to as the best interest of creditors test. Estate property

is not generally required to be liquidated for the benefit of creditors unless that treatment is

specifically required by the plan, but liquidation was not required in this case. Instead, the

Debtor, apparently recognizing that in a chapter 7 case, the liquidation value of the Residence

alone would be sufficient to pay all creditors in full, proposed to pay all of his creditors 100% of

their allowed claims, funding the plan out of his future earnings, and keeping the Residence.

---

[12]*See* § 1306(a)(1).

### B. The Request to Annul the Automatic Stay

Ms. Pence asks for this Court to annul the stay in order to ratify the Divorce Decree. "Any action taken in violation of the stay is void and without effect."[13] However, a court is given authority to not only lift the stay, but also to annul, modify or condition the stay, as provided in 11 U.S.C. § 362(d). Ms. Pence's request, if granted, would have the effect of validating all of the actions taken in the divorce court to date, including affirming the Divorce Decree and the property division contained therein.

As discussed above, the only actions in the divorce proceeding that were subject to the automatic stay were determinations of how the property of the estate was divided. Paragraphs 1, 2, 3, 7, 9 and 10 of the Divorce Decree were specifically excepted from the application of the automatic stay in § 362(b)(2)(A), and those paragraphs are valid and binding without further action from this Court. Paragraph 5 dealt with the division of personal property. The automatic stay had terminated with respect to the property of the Debtor, which included the personal property subject to statutory exemptions, pursuant to § 362(c)(3)(A), and so that paragraph is also valid and binding without further action from this Court.

The property of the estate subject to the automatic stay[14] is the equity in the Residence (less the Debtor's homestead exemption of $30,000), the value of the assets of the business Six Pence, and the insurance proceeds associated with damage to the Residence. Thus, the only three paragraphs to which the request to annul the automatic stay would apply are paragraphs 4, 6 and 8.

---

[13]*Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir.1990).

[14]*See* § 362(b)(2)(A)(iv).

Annulling means to reinstate an action or claim retroactively, to lift the stay "now for

then."[15] "Whether to annul the automatic stay falls within the Court's sound discretion."[16]

However, the Tenth Circuit Court of Appeals has stated that annulling a stay should be a rare

occurrence. "While district courts and bankruptcy courts have authority to 'annul' a stay, 11

U.S.C. § 362(d), thereby reinstating previous claims retroactively, such a result is rare and

probably available only to claimants who were honestly ignorant of the bankruptcy stay."[17] Cause

to terminate, annul, modify or condition a stay encompasses a broad category of issues. In a

recent case, *In re Schumann*,[18] Bankruptcy Judge Robert H. Jacobvitz devised a non-exclusive

list of factors to consider which this Court determines to be helpful and

persuasive.

The first factor is: <u>Whether the creditor had actual or constructive knowledge of the</u>

<u>debtor's bankruptcy filing when it acted in violation of the automatic stay</u>. Ms. Pence initially

stated that she did not receive notice of the bankruptcy filing, but the exhibits received and the

testimony at the evidentiary hearing show that notice was properly mailed to Ms. Pence. The

Court finds that Ms. Pence had knowledge of the Second Bankruptcy filing. This factor weighs

against annulling the stay.

The second factor is: <u>Whether the debtor filed the bankruptcy case in bad faith or</u>

<u>otherwise acted in bad faith</u>. The Court finds that there is no evidence of bad faith in this case.

---

[15]*Franklin Savings Ass'n v. Office of Thrift Supervision,* 31 F.3d 1020, 1023 (10th Cir. 1994).

[16]*In re Schumann*, 546 B.R. 223, 228 (Bankr. D.N.M. 2016).

[17]*Franklin Savings Ass'n*, 31 F.3d at 1023.

[18]*In re Schumann*, 546 B.R. 223 (Bankr. D. N.M. 2016).

The Debtor filed for chapter 13 bankruptcy relief, had his plan confirmed, and has continued

making plan payments for several years now. In fact, the evidence is that the Debtor is current

with his payments on the chapter 13 plan and is within several months of concluding all required

payments. This factor weighs against annulling the stay.

The third factor from the *Schumann* case is: Whether grounds for relief from the stay

existed and a motion, if filed, would likely have been granted prior to the automatic stay

violation. This Court routinely grants lift of stay motions to allow spouses to litigate in the

divorce court. If Ms. Pence had timely filed a motion for relief from stay in order to allow the

divorce court to divide the marital property, that motion would most likely have been granted as

discussed above. This factor favors annulment.

The fourth factor is: How quickly the creditor sought annulment of the automatic stay

upon learning of the debtor's bankruptcy filing. Ms. Pence did not seek relief from stay in the

Debtor's First Bankruptcy before it was dismissed, and she did not timely seek relief from stay in

the Second Bankruptcy, despite having adequate notice of the bankruptcy filing. The divorce

proceeded as if the stay had already been lifted, with all the parties acknowledging the Debtor's

bankruptcy, but apparently without checking to see if the stay had been lifted. This factor weighs

against annulling the stay.

The fifth factor is: Whether the creditor continued to violate the stay after learning of the

debtor's bankruptcy filing. Ms. Pence has continued the divorce proceedings. This factor weighs

against annulling the stay.

The sixth factor is: Whether the debtor remained 'stealthily silent' in the face of the

creditor's unknowing violation of the automatic stay. Ms. Pence's violation of the automatic stay

was not "unknowing," and the Debtor has not remained "stealthily silent." Instead, it appears the

14

Debtor's bankruptcy was common knowledge. The Debtor could have sought to halt the divorce

proceedings if he so desired, but it appears that he did not want the divorce proceedings halted, or

was unaware that the automatic stay could be applied to halt the divorce proceedings.

The ruling handed down by the divorce court on June 15, 2017 (Movant's Exhibit #13)

contains this statement from Judge Lyman: "The Respondent [the Debtor in this case] claims he

discharged the Petitioner's interest in the home through his bankruptcy." The use of the word

"discharge" in this sentence does not accord with the bankruptcy definition of discharge. While

the term is not specifically defined in the Bankruptcy Code, a discharge occurs when a

bankruptcy court enters an order of discharge, which releases a debtor from personal liability on

the debts treated in the bankruptcy.[19] A bankruptcy "discharge" cannot be used to refer to the

determination of another person's interest in property. While the Debtor may believe his

bankruptcy has eliminated Ms. Pence's interest in the Residence, the Court does not see grounds

to justify that belief.

This Court notes that the Debtor knew the bankruptcy and the divorce were proceeding

concurrently, and did not protest to the divorce court. From the evidence presented to the Court,

the Debtor never requested that the state court stop the divorce proceeding due to the stay. The

only affirmative filing of a notice of bankruptcy was filed by the Debtor six months after the

bench trial when the bankruptcy was discussed in open court, and two months after the state

court issued the Divorce Decree. In the discussion between the Debtor and the state court judge,

the Debtor did not advise the state court of the possible application of the stay, *see* Debtor's

Exhibit I. The Debtor may not have been "stealthily silent," but he was taking action to move

---

[19]*See* § 1328; *see also* § 524(a).

15

forward both the divorce and the bankruptcy. This factor supports annulling the stay.

The seventh factor is: <u>Whether the creditor would be prejudiced if the stay were not annulled</u>. Ms. Pence and the Debtor have litigated their divorce for almost five years. If the stay is not annulled, both parties will be prejudiced because they will be forced to retread the same ground and re-create the issues before the divorce court. This will take time and legal expense for both parties. There is no indication that the outcome would be any different than it is now.

A refusal to annul the stay will send the parties through the legal machinations and expense of recreating their motions and arguments to achieve what is likely to be the identical result from the divorce court. Besides the time and expense to the parties, principles of judicial economy also discourage this Court from compelling the divorce court to go through the same matters and reasoning twice, just to reach the same decision. However, the Court is not persuaded that this is enough to annul the stay.

The Tenth Circuit weighs the creditor's notice of the bankruptcy heavily. As quoted above, annulling a stay is a rare relief "probably available only to claimants who were honestly ignorant of the bankruptcy stay."[20] The Tenth Circuit left some room for discretion when it said annulment is "probably" available, but only to parties who were "honestly ignorant" that a stay was in place. There is more than one way to be "honestly ignorant." A party could not know of the bankruptcy filing at all.[21] Or a party could have an honest belief that the stay was no longer in force. Or, as in this case, the parties could be aware of the bankruptcy, but not realize the legal impact of the automatic stay or the necessity of filing a motion to lift the stay before proceeding

---

[20]*Franklin Savings Ass'n*, 31 F.3d at 1023.

[21]*See In re Nelson*, 335 B.R. 740 (Bankr. D. Kan. 2004) (The debtor filed bankruptcy shortly before the trial started, and did not inform anyone.).

with divorce litigation that divides property of the estate. The Court has weighed this possibility, but does not believe this is the sort of situation in which pleading ignorance of the law can negate the consequences of a violation. Both parties were represented by counsel through the divorce proceedings, although the Debtor had periods when he represented himself before securing new counsel. The Court has looked for, and not found, a Tenth Circuit case in which a creditor knew of the bankruptcy, and yet was accorded the relief of annulment.[22]

The Court finds that the automatic stay was in effect when the Divorce Decree was entered. While "any action taken in violation of the stay is void and without effect,"[23] not all of the Divorce Decree was entered in violation of the automatic stay, as described above. "With respect to the findings concerning the dissolution of the marriage, the custody and parenting of the children, and support, these matters are clearly excepted from the stay by § 362(b)(2)."[24] As such, the only paragraphs of the Divorce Decree that are void and without effect are: Paragraph (6) which awarded Ms. Pence one-half of the value of the assets of Six Pence; and Paragraph (8) which awarded the parties one-half of the insurance proceeds from damage to the marital home.

Paragraph (4) of the Divorce Decree, which awarded Ms. Pence one-half of the equity in

---

[22]*See, e.g., In re Calder* 907 F.2d 953 (10th Cir. 1990) (finding that the debtor did not provide notice of his pending bankruptcy until just before the state court was to enter final judgment); *In re Spriggs*, 219 B.R. 909, 913 (B.A.P. 10th Cir.), *aff'd*, 166 F.3d 348 (10th Cir. 1998) (finding that the debtor had provided notice of the bankruptcy to the creditor, and so the *Calder* exception did not apply); *In re Downing*, 141 B.R. 748 (Bankr. N.D. Okla. 1992) (finding that the debtor did not notify opposing parties or the state court of his bankruptcy until an adverse state court judgment had been entered).

[23]*Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990).

[24]*In re Nelson*, 335 B.R. 740, 754 (Bankr. D. Kan. 2004); *see also In re Wright*, 371 B.R. 472 (Bankr. D. Kan. 2007) (holding that a divorce decree entered post-petition in violation of the automatic stay was void with respect to the purported division of the marital asset).

the parties' marital home, is partially void. The state court awarded Ms. Pence an equitable lien

and judgment against the real property and home in the sum of $54,250. However, the stay had

terminated only with respect to the $30,000 homestead exemption. Thus, the equitable lien and

judgment is valid only up to the $30,000 of equity that was not subject to the automatic stay. The

remaining $24,250 would be a lien and judgment against property of the estate which was subject

to the automatic stay, and is therefore void. Accordingly, the equitable lien and judgment

awarded in paragraph (4) of the Divorce Decree should be reduced to $30,000. If the parties

continue to litigate the division of marital property once the stay is lifted, this award amount may

change based on legal action taken in the state court once the automatic stay no longer applies to

the property of the estate.

Accordingly, taking all of these considerations into account, the Court determines that the

portion of the Debtor's motion that seeks annulment of the automatic stay should be denied.

The Court will now turn to the second category of relief requested by Ms. Pence, the

motion to lift the stay.

### C. The Request to Lift the Automatic Stay

Ms. Pence has asked the Court for relief from stay to proceed with the divorce case.

When a secured creditor moves a bankruptcy court for relief from stay, the factors to consider are

generally the financial questions of equity in the property and the necessity of the property for

reorganization. However, when a party instead moves for lift of stay in order to pursue litigation

against a debtor, the factors for consideration are somewhat different. The automatic stay has two

general goals. "First, it prevents the diminution or dissipation of the assets of the debtor's estate

during the pendency of the bankruptcy case. Second, it enables the debtor to avoid the

18

multiplicity of claims against the estate arising in different forums."[25] Whether or not there is

"cause" to lift the stay is an "exercise of the court's discretion."[26] Judge John H. Allen of this

Court set forth a list of factors, the "Curtis factors," that a court should consider when making the

decision to lift the stay in order to proceed with litigation in another forum. This Court

determines that a consideration of these will be helpful here. There are a number of them, and the

Court will discuss only those factors that bear directly on this situation.

Factor: Whether the relief will result in a partial or complete resolution of the issues. The

divorce court has been handling the entirety of the matters surrounding the dissolution of the

Debtor's and Ms. Pence's marriage. Lifting the stay would allow one court to resolve all the

issues involved. This factor weighs in favor of lifting the stay.

Factor: The lack of any connection with or interference with the bankruptcy case. The

Debtor's confirmed chapter 13 plan will pay all creditors 100% of their claims out of the Debtor

monthly earnings. The Debtor is moving towards completion of that plan. The plan does not

require the liquidation of the Residence, the Six Pence property or the insurance proceeds. The

evidence presented here has been that the divorce court's adjudication of the marital dissolution

has not affected any of his creditors. The division of assets made by the divorce court has not

diminished the amount paid to the creditors. Thus, the Court finds that the divorce has not and

will not have any negative impact on the Debtor's bankruptcy case. This factor weighs in favor of

lifting the stay.

Factor: Whether a specialized tribunal has been established to hear the particular cause of

---

[25]*In re Curtis*, 40 B.R. 795, 798 (Bankr. D. Utah 1984).

[26]*Id*. at 799.

19

action and that tribunal has the expertise to hear such cases. The divorce court has expertise in

dividing the marital estate between divorcing parties. This Court has routinely lifted the stay in

many other cases to allow the divorce court to decide questions of ownership regarding marital

property, and then accords respect to those decisions.[27] This factor weighs in favor of lifting the

stay.

Factor: Whether litigation in another forum would prejudice the interests of other

creditors, the creditors' committee and other interested parties. Allowing the divorce court to

continue its administration of the parties' divorce does not prejudice any creditors, due to the fact

that the Debtor's chapter 13 plan is returning 100% of the allowed claims to his creditors. This

factor weighs in favor of lifting the stay.

Factor: The interest of judicial economy and the expeditious and economical

determination of litigation for the parties. Judicial economy would be best served by allowing the

divorce court to continue to adjudicate the divorce, and it would be duplicative and wasteful to

require the parties to litigate the division of marital property in this forum as well. This factor

weighs in favor of lifting the stay.

Factor: Whether the foreign proceedings have progressed to the point where the parties are

prepared for trial. This factor favors lifting the stay, as the trial has already taken place and

judgment has been entered. Further, lifting the stay now to allow the state court to decide the

division of the marital assets should not take much, if any, time to prepare for, as it could very

---

[27]In a recent case involving a divorce and questions of property ownership between the
former spouses, this Court accorded deference to the divorce court's allocation of property
ownership. *See In re Christensen*, 561 B.R. 218 (Bankr. D. Utah 2016). The chapter 7 trustee
appealed, claiming that the bankruptcy court should use different criteria to divide marital
property than the divorce court had considered. This Court's deference to the divorce court's
findings was affirmed by the District Court in *West v. Christensen*, 576 B.R. 223 (D. Utah 2017).

easily be that the same evidence and arguments will be presented.

Factor: The impact of the stay on the parties and the "balance of hurt." If the Court were to refuse to lift the stay, there would remain possible uncertainty as to the ownership of the marital assets that are property of the bankruptcy estate, confusion as to how to dovetail the portions of the divorce court's ruling that were unaffected by the stay with a future court ruling, along with the added stress and frustration of continued litigation. This Court finds that such would not only cause harm to Ms. Pence, but also to the Debtor. Consequently, the Court determines that this factor is almost neutral.

Accordingly, the Court determines that overall, there is cause and it is appropriate to lift the stay with regard to the divorce proceedings and allow the court currently handling the divorce to continue. Although this is a bit awkward as the divorce trial has already been held, this Court nevertheless finds and concludes that the stay should be lifted to allow the divorce court to either reaffirm its ruling in paragraphs 4, 6 and 8 in the Divorce Decree as it was originally issued or re-litigate the division of estate property. The Court determines that this gives deference to the express language of the exceptions to the stay for domestic matters that are listed in § 362(b)(2)(A), the prohibition against taking action against property of the estate without lifting the stay, and the finding of cause to now lift the stay to have only certain matters litigated in the state court following the Curtis factors.

As the Debtor's plan pays 100% of the claims of unsecured creditors without requiring the liquidation of any of the property which will need to be divided by the state court, this Court does not see any reason for the parties to present the prospective decision of the state divorce court back to this Court for further consideration.

### D. Damages

The Debtor requested damages from Ms. Pence for violating the automatic stay. Section 362(k) states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees." The injured party is to prove damages by a preponderance of the evidence.[28] The phrase "actual damages" implies that an actual injury must take place that has caused financial expense or harm. As stated previously, the Debtor knew both the divorce action and his bankruptcy were proceeding concurrently and he made no efforts to halt the divorce. There is no evidence that he would have litigated his divorce differently over the past five years if the automatic stay had halted his divorce temporarily while Ms. Pence sought relief from stay at an earlier date. There is also no evidence that he incurred attorney fees in pursuing his divorce that he would not have incurred if the automatic stay had been handled differently. Even if the automatic stay has been violated, the Court cannot award damages that have not been proven. As such, the Court finds that the Debtor has not carried his burden to show that he incurred any actual damages in the pursuit of his divorce litigation when the automatic stay was violated.

Ms. Pence brought the current motion to annul or lift the stay, and the Debtor has incurred attorney fees in defending against this motion. However, the Debtor has not shown that these attorney fees were incurred by a violation of the automatic stay. Ms. Pence's current motion is brought under the conditions set forth § 362(d). This motion complies with the automatic stay and does not violate it. Accordingly, the Court determines that the Debtor is not entitled to an award of attorneys fees in defending against Ms. Pence's motion to annul or lift the stay.

---

[28]*See Johnson v. Smith*, 501 F.3d 1163, 1171 (10th Cir. 2007) (internal citations omitted).

**E. Extraneous matters**

In his Supplemental Memorandum filed at Dkt. No. 102 on January 23, 2018, the Debtor

raised the matter of including the divorce court's judgment in his bankruptcy case, and possibly

discharging the property division. That relief would require its own motion as, "[n]o motion may

be included in a response or reply memorandum." Local Rule 9013-1(e)(4). That issue would be

properly suited for its own motion and briefing, and should involve the chapter 13 trustee.

Accordingly, the Court makes no determination on this issue.

**VI. Conclusion**

For these reasons, the automatic stay should be lifted only as above set forth.

The Court will enter the order.

_____END OF DOCUMENT_____

## Designation of Parties to Receive Service

Service of the foregoing **MEMORANDUM DECISION** should be effected on the parties

listed below:

Rory Dustin Pence
290 S. 200 W.
Richfield, UT 84701
     *Debtor*

Val Dalling
Vannova Legal, PLLC
49 West 9000 South
Sandy, UT 84070
     *Attorney for Debtor*

Douglas L. Barrett
Law Office of Douglas Barrett, LLC
1215 S. Main St.
Orem, UT 84058
     *Attorney for Movant*

Sheri Pence
c/o Douglas L. Barrett
1215 S. Main St.
Orem, UT 84068
     *Movant*